FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN -2 PM 3:53

LORETTA G. WHYTE
CLERK

# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EMANUEL ISAAC**                                         **CIVIL ACTION**

**VERSUS**                                                    **NO. 04-2524**

**CHARLES C. FOTI, WARDEN**                      **SECTION "N" (6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting

hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and

recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable,

Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Court has determined that this matter can be disposed

of without an evidentiary hearing.  For the following reasons, **IT IS HEREBY RECOMMENDED**

that the instant petition be **DENIED** as untimely.

## PROCEDURAL HISTORY

Petitioner Emanuel Isaac, a Louisiana state prisoner, was arrested on a charge of second

degree murder on February 5, 1996 and  convicted of manslaughter on October 21, 1996 after

waiving a jury trial and agreeing to a bench trial.[1]  After a multiple bill hearing on February 4, 1997,

---

[1]State Record Vol. 3, Trial Transcript;  State Record Vol. 1, Docket Master.



Isaac was sentenced to twenty years as a double offender on March 24, 1997.  He subsequently filed a notice of appeal.[2]  On May 28, 1997, Petitioner's attorney, Donald Pinkston, requested and received a 60-day extension of time to file an appeal.[3]  On October 9, 1997, the state district court ordered Attorney Pinkston to pay for transcripts and continue his appeal.[4]  On January 30, 1998, the Louisiana Fourth Circuit Court of Appeal ordered Attorney Pinkston to file copies of the multiple bill transcripts.[5]  On March 16, 1998, the Fourth Circuit again ordered Pinkston to file the copies.[6]  On April 28, 1998, the Fourth Circuit again ordered Pinkston to file the copies.[7]  On July 17, 1998, the Fourth Circuit ordered Pinkston to file a brief.[8]  The petitioner's appeal brief was finally filed with the Fourth Circuit on November 2, 1998.[9]  On appeal, Isaac asserted that the trial court erred in finding him to be a multiple offender due to insufficient evidence.  On November 18, 1998, the Fourth Circuit again ordered Pinkston to file copies of the transcript from the Multiple Bill

_____

[2]State Record Vol. 3, Multiple Bill Hearing Transcript dated 2/4/97; State Record Vol. 1, Sentencing Form dated 3/24/97, and Notice of Appeal dated 3/24/97.

[3]State Record Vol. 1, Motion for Extension of Time, *State v. Isaac*, No. 382-227, Orleans Parish Criminal District Court (5/28/97).

[4]State Record Vol. 1, Docket Master entry dated 10/9/1997.

[5]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 1/30/98).

[6]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 3/16/98).

[7]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 4/28/98).

[8]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 7/17/98).

[9]State Record Vol. 2, *see* Brief filed in *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 11/2/98).

Hearing.[10]  On December 24, 1998, the petitioner filed a motion for extension of time to submit a

*pro se* brief with the Louisiana Fourth Circuit Court of Appeal.[11]  An order for new counsel was

made by the Fourth Circuit Court and the case was remanded to the Criminal District Court of

Orleans Parish on January 7, 1999.[12]  On January 27, 1999, the Fourth Circuit granted an extension

of time for petitioner to file a supplemental brief and to review the record.[13]  On March 10, 1999, the

Criminal District Court appointed the Louisiana Appellate Project to represent the petitioner.[14]  On

April 19, 1999, the petitioner filed a supplemental brief to his direct appeal with the Louisiana

Fourth Circuit Court of Appeal.[15]  The appeal was denied on November 17, 1999.[16]  Petitioner filed

for a writ of review with the Louisiana Supreme Court on January 26, 2000.[17]  The writ was denied

---

[10]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 11/18/98).

[11]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 12/24/98).

[12]State Record Vol. 2, *State v. Isaac*, No. 98-KA-0182 (La. App. 4 Cir. 1/7/99).  The order cites the reason for the remand as due to the suspension of Attorney Pinkston from the practice of law.  Additionally, for an unknown reason, the Louisiana Fourth Circuit Court of Appeal filed an identical order of remand and appointment of new counsel on February 24, 1999.

[13]State Record Vol. 2.

[14]State Record Vol. 2, *State v. Isaac*, No. 382-227 "B " (Orleans Parish Criminal District Court 3/10/99).

[15]State Record Vol. 3.

[16] *State v. Isaac*, 762 So.2d 25 (98-KA-0182) (La. App. 4 Cir. 11/17/99), a copy of which can be found in State Record Vol. 1.

[17]State Record Vol. 3, *State v. Isaac*, No. 00-KO-0239.  The State's response apparently concedes that petitioner's request to the Louisiana Supreme Court for writ of certiorari was timely filed.  *See* Fed. Rec. Doc. 3.

on January 26, 2001.[18]

Petitioner next filed an application for Post-Conviction Relief (PCR) with the Orleans Parish

Criminal District Court, which was signed and dated as December 21, 2001, but which was not date

stamped by that court.[19]   The Orleans Parish Criminal District Court denied the petitioner's PCR

application on January 10, 2002.[20]  Petitioner did not appeal this January 10, 2002 ruling[21] but

instead filed a Motion to Reconsider with the Orleans Parish Criminal District Court on or about

May 16, 2002, which was denied on May 20, 2002.[22] The petitioner filed a request for review of the

denial of the Motion to Reconsider and of the  January 10, 2002 trial court's denial of post-

conviction relief with the Louisiana Fourth Circuit Court of Appeal on June 24, 2002.[23]  The Fourth

Circuit denied the appeal on July 12, 2002.[24] Petitioner filed for supervisory writs with the Louisiana

---

[18] *State v. Isaac*, 781 So.2d 1255 (00-KO- 0239) (La. 1/26/01), a copy of which can be found in State Record Vol. 3.

[19] State Record Vol. 1.

[20] State Record Vol. 1. Specifically, the state district judge, Patrick Quinlan, found that petitioner had failed to meet his burden  under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) to establish ineffective assistance of counsel.

[21] Although a handwritten letter from petitioner was filed with Judge Miriam Waltzer in the state district court entitled, "Appeal from Criminal District Court", the letter was filed on January 7, 2002 and could therefore not have been a faulty attempt to appeal Judge Quinlan's ruling dated January 10, 2002. *See* State Record Vol. 1 for a copy of this letter.

[22] State Record Vol. 1. The court's denial is noted in the top left hand corner of the motion.

[23] State Record Vol. 2, Docket No. 2002-K-1255, "Application for Writs of Certiorari, Prohibition and Review". For an unknown reason, it appears that petitioner filed this identical pleading with the trial judge, who denied the application on July 1, 2002. *See* State Record Vol. 2.

[24] State Record Vol. 2, *State v. Isaac*, No. 2002-K-1255 (La. App. 4th Cir. 7/12/02).

Supreme Court on August 21, 2002.[25] The Louisiana Supreme Court denied the writ application on

September 5, 2003.[26] On September 1, 2004,[27] Isaac filed the instant application for federal writ of

habeas corpus, alleging ineffective assistance of counsel resulting in the denial of his right to present

a self-defense claim. The State filed a response to the petition wherein the State concedes that the

petitioner has exhausted all of his claims.[28] The State asserts, however, that petitioner's federal

habeas application is untimely.

## UNTIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner

has one year to bring his habeas corpus claims pursuant to Title 28, United States Code, Section

2254, with this one year period commencing to run from "the latest of" either the date the petitioner's

state judgment became final or the expiration of his time for seeking review. *See* 28 U.S.C.

---

[25]State Record Vol. 3, No. 02-KH-2219, "Petition for Writ of Certiorari, Prohibition and Review".

[26]*State ex rel. Isaac v. State*, 852 So.2d 1030(02-KH-2219) (La. 9/5/03), a copy of which is located in State Record Vol. 1.

[27]This September 1, 2004, filing date was ascertained via the Court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting pro se is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[28]Fed. Rec. Doc. No. 3, State Response at p.6.

§2244(d)(1) (West 2005).[29]  In this case, the petitioner's conviction became final on April 26, 2001,

or 90 days after January 26, 2001, the date the Louisiana Supreme Court denied his writ application

from his direct appeal.[30]  Accordingly, under the statute, Isaac's federal *habeas* limitation period would

expire one year later, on April 26, 2002. Having filed his federal *habeas* petition on September 1,

2004, petitioner's challenges to his conviction must be dismissed as untimely, unless the one-year

statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2).  Under that

statutory provision, "[t]he time during which a properly filed application for State post-conviction

or other collateral review with respect to the pertinent judgment or claim is pending shall not be

counted toward any period of limitation under this subsection." 28 U.S.C. §2244 (d)(2); *Flanagan*

*v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998).

In this case, petitioner filed an application for post-conviction relief with the Orleans Parish

Criminal District Court on or about December 21, 2001,[31] thereby interrupting the running of the time

limitation for filing a habeas corpus petition after **238** days of the 365 day limitation period had

expired.[32]  The state district court denied petitioner's application on January 10, 2002 and it was

considered "pending" for thirty days thereafter, until the time for filing for review of this decision

lapsed.  *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).  Isaac's PCR thus ceased to be

---

[29]The AEDPA applies to this case because it was filed after April 24, 1996, the date of the AEDPA's enactment.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 206, 138 L.Ed.2d 481 (1997).

[30]The State concedes this is the date the conviction became final in it's response to the petitioner's application.  Fed. Rec. Doc. No. 3.

[31]State Record Vol. 1.  The court gives petitioner the benefit of the date he signed and dated this application as there is no date stamp on the application.

[32]There are 238 days between April 26, 2001(finality of conviction) and the December 21, 200, PCR filing.

pending as of February 9, 2002. *See* Louisiana Courts of Appeal Uniform Rule 4-3. Having failed

to timely file an appeal of the trial court's ruling, petitioner then filed a "Motion to Reconsider" the

denial of the PCR application with the state district court on May 16, 2002.[33] Assuming, *arguendo*,

that a Motion to Reconsider would constitute other "collateral review" under Section 2244(d)(2),[34]

petitioner thus allowed an additional **95** days of his federal limitations period to run before he filed

for such other collateral review.[35] The state district court denied this motion on May 20, 2002.[36] The

application remained "pending" until June 19, 2002, when once again the 30-day deadline under the

Louisiana Courts of Appeal Uniform Rule 4-3 for filing a writ application to the Louisiana Fourth

Circuit would have expired. *Melancon*, 259 F.3d at 406. *See also*, *Carey v. Saffold*, 536 U.S. 214,

219-20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *Grillette v. Warden, Winn Correctional Center*,

372 F.3d 765 (5th Cir. 2004). Under current Fifth Circuit precedent, when petitioner failed to timely

file his request for review in the Louisiana Fourth Circuit, his post-conviction writ application had

ceased to be "pending" and an additional **4** days ran against petitioner.[37] Once the application was

subsequently properly filed with the Fourth Circuit on June 24, 2002, however, petitioner's

---

[33]A copy of this motion is located in State Record Vol. 1.

[34]La. C.Cr. P. art. 930.6 provides for the procedure to review a trial court's judgment on post-conviction relief. Motions to reconsider are not included or considered in this provision. However, the State does not argue to this court that the motion to reconsider should not be considered as "other collateral review." In fact, the only argument made by the State relative to tolling is that Isaac failed to file any applications for relief within the 1 year period after his conviction became final.  As seen in petitioner's procedural history, *see* pages 1-4 of this Report and Recommendation, the State's assertion is patently incorrect.

[35]There are 95 days between February 9, 2002 and May 16, 2002.

[36]State Record Vol. 1.

[37]4 days lapsed between June 19, 2002 and the June 24th, 2002 Fourth Circuit filing.

application again became "pending" and thus eligible for "tolled time" until that court denied relief on July 12, 2002. *Melancon*, at 407.

Isaac next filed an untimely request for review of his post-conviction application to the Louisiana Supreme Court, filing the request on August 21, 2002 [38] instead of by the state law deadline of August 12, 2002.[39]  Having failed to comply with the state procedural rule, namely Louisiana Supreme Court Rule X, § 5(a), Isaac no longer had a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" pending sufficient to toll the limitations period. *See* 28 U.S.C. §2244(d)(2); *Williams v. Cain*, 217 F.3d 303, 308 (5thCir. 2000).[40]  Therefore, an additional **750** days passed until September 1, 2004, when Isaac filed his federal petition in this Court. In total, Isaac's petition is therefore **722** days untimely.[41]

---

[38]State Record Vol. 3.

[39]Thirty days after the July 12, 2002 ruling of the Fourth Circuit Court would be August 11, 2002.  As August 11, 2002 would be a Sunday, petitioner would have had until August 12, 2002 to file his application for review.

[40]Louisiana Supreme Court Rule X, § 5(a) sets a 30-day deadline for timely seeking review of a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs. Rule X, § 5(a) does not allow for any extension of this 30-day deadline. As explained in *Williams*, 217 F.3d at 308, "Rule X, § 5(a) is a procedural requirement governing the time of filing. The rule sets out no specific exceptions to, or exclusions from, this requirement. Indeed, the rule forbids any extension of the thirty-day limit." As Isaac allowed the time for seeking further review to expire, the plain language of 28 U.S.C. § 2244(d)(1)(A) establishes that the AEDPA's one-year limitations period again commenced to run on August 12, 2002.

[41]To sum up, the court's calculation is as follows: April 26, 2001 to December 21, 2001 (**238 days**) + February 9, 2002 to May 16, 2002 (**95 days**) + June 19, 2002 to June 24, 2002 (**4 days**) + August 12, 2002 to September 1, 2004 (**750 days**) = **1081 days**. Under the AEDPA, Isaac had 365 days grace, therefore he is **722 days** untimely (**1081 - 365 = 722**).

It is also anticipated that petitioner may object to the court's finding that he untimely filed his application to the Louisiana Supreme Court. Petitioner allegedly signed his application to the

At this point, the court pauses to consider the effect of a new U.S. Supreme Court decision, *Pace v. DiGuglielmo*, – U.S. –, 125 S. Ct. 1807, 2005 WL 957194 (U.S. April 27, 2005) on petitioner's case. In *Pace*, the U.S. Supreme Court addressed the question of whether an untimely state petition could ever be deemed "properly filed" for purposes of the federal tolling provision, 28 U.S.C. Section 2244(d)(2), when the state limitations provision provided for certain exceptions to its timely filing requirement. In *Pace,* the court found that, even though the state court accepted and reviewed the state petition on its merits, and the state statute contained certain exceptions to application of its time bar, the timeliness of the state petition was still a condition to its proper filing for federal tolling purposes. In other words, *Pace* held that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of §2244(d)(2)." *Pace* specifically rejected the idea that a distinction should be drawn between state limitation provisions which allow for certain exceptions to the time requirements and those state limitation provisions which do not carve out such exceptions. *Pace,* --U.S.--, 125 S.Ct. at 1811.

As a result of the *Pace* decision, it is questionable whether this court should still apply the analysis used by the U.S. Fifth Circuit in the *Melancon* decision. *See Melancon v. Kaylo*, 259 F.3d 401 (5th Cir. 2001). The process of calculating "tolled" time, as explained in *Melancon*, depended upon the nature of the state rule governing the time for filing and whether the state procedures

---

Louisiana Supreme Court on August 7, 2002, *see* State Record Vol. 3, and, it might be presumed, tendered the application to his prison custodian on that date. However, even if the court were to give petitioner the benefit of a state mailbox rule and allow the limitations period to be tolled until the Louisiana Supreme Court denied said application on September 5, 2003, petitioner would still be untimely as he only had 28 days left of his one year limitations period but still waited almost another full year after the Louisiana Supreme Court denied the writ before filing his federal habeas corpus petition.

allowed for any exceptions to the 30-day deadline allowed under state law to seek review of a lower court decision.  In the case of Louisiana Courts of Appeal Uniform Rule 4-3,[42] which was at issue in *Melancon*, that provision allowed the Court of Appeal in *Melancon* to consider (and that court *did consider)* Melancon's application on the merits although the application was not timely filed. *Melancon*, 259 F.3d at 405.  The Fifth Circuit therefore found Melancon's application to be entitled to tolling "credit" for the time when the "excused" albeit untimely application was pending before the state appellate court. *Id.* at 406-7.

The Fifth Circuit has not yet had an opportunity to address the viability of *Melancon* in light of *Pace*.  Since it is more beneficial to petitioner, this court has assessed the issue of petitioner's timeliness using *Melancon.* As a result, petitioner was credited for "tolled time" between June 24, 2002 (the filing date with the Louisiana Fourth Circuit of writ no. 2002-K-1255) and July 12, 2002 (the date the Fourth Circuit denied writ no. 2002-K-1255).  However, in light of *Pace*, it appears to the court that petitioner should not receive the benefit of the additional *Melancon* tolled time, thus making petitioner's federal habeas petition all the more untimely.

Based upon the above, petitioner's federal habeas corpus petition is clearly time-barred, absent a basis for equitably tolling petitioner's prescriptive period.  Equitable tolling, however, is justified only in "rare and exceptional circumstances." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (quoting *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074, 119 S.

---

[42]Louisiana Courts of Appeal Uniform Rule 4-3 provides for a thirty day return date during which a request for supervisory review must be sought from the intermediate appellate court. However, upon a proper showing, the trial court or the appellate court may extend the time for filing the application upon the filing of a motion for extension of return date by the applicant, filed within the original or an extended return date period.

Ct. 1474, 143 L.Ed.2d 558 (1999)). Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (citing *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of § 2254 relief. *Coleman*, 184 F.3d at 403.

While it is clear from the record that Isaac had some difficulties with his attorney, who was ultimately disbarred during the period when Isaac was filing of his direct appeal, another attorney was appointed and petitioner was provided with a full and adequate appeal. Isaac, however, waited too long after his conviction became final to file for post conviction relief, and was not diligent in appealing the lower court's decisions. Additionally, Isaac waited nearly a full year after his post-conviction proceedings were denied by the state supreme court before filing the instant federal habeas petition in federal court. Therefore, Isaac's actions cannot be characterized as diligent and do not justify equitable tolling. Isaac's federal habeas petition is thus untimely filed and his claims are barred from federal review.

Accordingly;

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that Emanuel Isaac's application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure

to object. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 2ND day of June , 2005.


LOUIS MOORE, JR.
United States Magistrate

12